715 F.2d 1148
 Ben REID, Plaintiff-Appellant,
v.
UNITED STATES of America, the State of Indiana, and Floyd
County Commissioners, Defendants-Appellees.
Bruce K. LORCH, Plaintiff-Appellant,
v.
UNITED STATES of America, State of Indiana, and Jefferson
County Commissioners, Defendants-Appellees.
Maurice C. and Mary F. SMITH, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendants-Appellees.
Dorothy WINKLER, Plaintiff-Appellant,
v.
UNITED STATES of America, et al., Defendants-Appellees.
 Nos. 81-1112, 81-2613, 81-2850 and 81-2852.
 United States Court of Appeals,
Seventh Circuit.
 Submitted July 19, 1983.*
Aug. 16, 1983.
As Amended Aug. 22, 1983.
Rehearing Denied Oct. 20, 1983.
 
 Charles Gleason, Indianapolis, Ind., for plaintiffs-appellants.
 Brenda Franklin Rodeheffer, Deputy Atty. Gen., Indianapolis, Ind., Thomas W. Yoder, Edward J. Liptak, Fort Wayne, Ind., Bruce E. Cissna, Dale, Ind., Maria A. Iizuka, Dirk D. Snel, Dept. of Justice, Land & Natural Resources, Washington, D.C., Margaret Smith, Rockport, Ind., Max C. Mason, New Albany, Ind., Virginia Dill McCarty, Bradley L. Williams, Michael Schaefer, Linley E. Pearson, Sarah Evans Barker, Indianapolis, Ind., for defendants-appellees.
 Before CUMMINGS, Chief Judge, and PELL and COFFEY, Circuit Judges.
 CUMMINGS, Chief Judge.
 
 
 1
 These four consolidated cases present a unified attack alleging that the United States and others are trespassing on land owned by the appellants along the banks of the Ohio River. The alleged trespass has occurred due to the construction and operation by the United States of high-lift navigation dams along the Ohio River. The appellants brought their initial petitions for injunctive relief in Indiana state courts, requesting an injunction directing the United States to lower the river level. The cases were all removed to federal district court, which dismissed the complaints. Because we hold that these actions are barred by sovereign immunity, that the cases were improperly filed in state court, and that appellants' sole remedy is an action in federal court under the Tucker Act, 28 U.S.C. §§ 1346 and 1491, we affirm the orders of the district courts.
 
 I. FACTS
 
 2
 Five sets of actions are of particular concern to this appeal. The first set is composed of appellants Reid and Lorch, whose claims to ownership of the properties in question are not disputed by the appellees. The second set is composed of appellants Smith and Winkler, whose claims of ownership are challenged by the appellees. The appellees may also be divided into two sets, the first of which is composed solely of the United States. The second set of appellees consists of the State of Indiana, the Commissioners of Floyd and Jefferson counties, the Spencer County Park and Recreation Board, the Indiana-Michigan Electric Co., and Shelly & Sands, Inc. (This set of appellees will hereinafter be referred to as the "non-federal appellees.") And the final group of importance to this case consists of 17 high-lift navigation dams on the Ohio River, the construction of which was the apparent genesis of this litigation. Several of these groups will be discussed more fully below, beginning with the last.
 
 
 3
 The function of the high-lift dams is described in detail in Loesch v. United States, 645 F.2d 905, 912-13, 227 Ct.Cl. 34, certiorari denied, 454 U.S. 1099, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981). Briefly, the dams replaced 49 low-lift navigation dams along the river. The high-lift dams were constructed to improve navigation by reducing the number of locks a ship or barge needed to pass through on its way up or down the river. The court in Loesch found that these high-lift dams were not flood control dams, and while they could maintain a certain minimum flowage during periods of natural low flow, the high-lift dams did not affect the river level during periods of high flow and could not
 
 
 4
 cause floods, or increase the number of floods, or affect flood peaks and time intervals, or increase the effect of flood events.
 
 
 5
 Id. at 913.
 
 
 6
 Appellants Reid (No. 81-1112) and Lorch (No. 81-2613) both claim title to land along the Ohio River. Both claim that the United States, through the Army Corps of Engineers, is trespassing upon their land and causing erosion thereof by maintaining the Ohio River at an artificially high water level. The relief requested is an injunction requiring the United States to lower the river level to the depth specified in a 1911-1914 survey of the river.
 
 
 7
 Both appellants also state claims against certain of the non-federal appellees. Appellant Reid claims that Indiana and the Floyd County Commissioners have breached their duty to protect the appellant's property from trespass by the United States. Appellant Lorch makes the same claim against Indiana and the Jefferson County Commissioners.
 
 
 8
 Appellants Smith (No. 81-2850) and Winkler (No. 81-2852) also allege that the United States is committing trespass and waste on their property. Appellant Winkler also alleges trespass on the part of the State of Indiana, Spencer County Recreation Board, and the Indiana-Michigan Electric Co., and Shelly & Sands, Inc.[1] Unlike the situation with respect to appellants Reid and Lorch, however, the appellees here claim that appellants Smith and Winkler do not own the properties in question. Appellants in fact concede as much. The record indicates that Tracts No. 605 and 605-E-1 were acquired by the United States from the Smiths by a judgment of condemnation entered October 2, 1967. Similarly, Tract No. 1108 was acquired by the United States from appellant Winkler by purchase. A warranty deed was recorded on February 18, 1971. The appellants' response is that both of these transfers to the United States are void for failure to comply with Indiana state law.
 
 
 9
 A continuing theme pressed by all the appellants throughout this litigation concerns Indiana Code §§ 4-21-4-1 and 4-21-4-2. Section 4-21-4-1 confers Indiana's consent to the purchase by the United States of land on the bank of the Ohio and Wabash Rivers for purposes of navigation improvement. Section 4-21-4-2 confers jurisdiction on state courts to adjudge condemnation proceedings brought by the United States against owners of land riparian to the Ohio and Wabash, again for purposes of improving the rivers. This section also sets forth procedures to be followed in such condemnation proceedings. Appellants claim that these statutes are the exclusive means by which the United States may acquire land along the Ohio for river improvement. Appellants Smith and Winkler argue that the transfer of land from them to the United States was void for failure to comply with §§ 4-21-4-1 and 4-21-4-2 and that they are in fact the true owners of the disputed properties. All appellants claim that, because §§ 4-21-4-1 and 4-21-4-2 do not provide for inverse condemnation,[2] that remedy is not available to them and they are therefore entitled to an injunction prohibiting trespass by the United States.[3]
 
 
 10
 The appellants each filed petitions in various Indiana state courts in 1980 requesting injunctions prohibiting trespass by the appellees.[4] The United States removed all the cases to the United States District Court for the Southern District of Indiana. Each of the non-federal appellees consented to removal. Appellants, however, vigorously opposed removal.
 
 
 11
 In each case the district court denied the appellants' motions to remand and granted the appellees' motions to dismiss. In Reid and Lorch, the district court held that the appellants' remedy, if any, lay in an action for inverse condemnation under the Tucker Act, 28 U.S.C. §§ 1346 and 1491. In Smith, the district court relied on this Court's opinion in Cole v. United States, 657 F.2d 107 (7th Cir.), certiorari denied, 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981). Cole held that because the United States had not consented to be sued for trespass in state courts, appellant Cole's claim was barred by sovereign immunity. Id. at 109. Finally, in Winkler the district court held alternatively that the appellant's claim was barred by sovereign immunity, citing Cole, that the appellant had failed to show that the purchase of her property by the United States was not authorized, and that the appellant's claim was barred by the applicable statute of limitations, 28 U.S.C. § 2401(a) and (b). Appellants filed timely notices of appeal from each of these orders.
 
 
 12
 After the notice of appeal had been filed in Winkler, the United States moved in this Court for leave to petition the district court to correct a clerical error in the original judgment and order of the district court. The motion for leave was granted. The clerical error referred to was a statement made by the district court that the United States owned the disputed property in fee simple. In fact the United States concedes that it owns the land subject to an interest in minerals retained by Winkler. Appellant Winkler vigorously opposed the motion to correct the clerical error, arguing that the United States, by acknowledging appellant Winkler's retained mineral interest, had effectively conceded that Winkler was the true owner of the property, and that therefore the error was substantive rather than clerical. The district court declined to consider the appellant's argument and granted the motion to correct error.
 
 
 13
 Lastly, in Smith the United States has moved for an award of costs and attorneys' fees assessed against appellants' counsel,[5] arguing that counsel has engaged in a pattern of frivolous, duplicative, and harassing lawsuits. While the response in Smith to the government's motion for costs and fees argues that in fact Smith is distinguishable from Cole, in appellant Winkler's reply brief the appellant suggests that the United States should be estopped from arguing that these lawsuits are multiplicious because the United States opposed an attempt to certify a class in a related case, referring to Loesch v. United States, 645 F.2d 905, 227 Ct.Cl. 34, certiorari denied, 454 U.S. 1099, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981).[6]II. DISCUSSION
 
 
 14
 The appellants' combined challenge to the actions of the United States raises four issues. First, the appellants argue that the district court lacked subject matter jurisdiction over the case and that the district court's denial of the appellants' motions to remand was therefore erroneous. Second, the appellants argue that the United States is trespassing on their property and that they lack an adequate remedy at law because of either the nature of the trespass, the nature of the injury inflicted, or because inverse condemnation would not be an effective remedy due to the appellees' allegation that the appellants do not own the land in question. Third, appellants Smith and Winkler continue to assert ownership over the two parcels of land involved in their respective cases. Fourth, the appellants argue that an award of costs and fees to the appellees is not appropriate because these cases involve facts and issues substantially different from those decided by this Court in Cole.
 
 A. Jurisdiction
 
 15
 Most of the appellants' claims have already been rejected by this Court in Cole v. United States, 657 F.2d 107 (7th Cir.), certiorari denied, 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981). In Cole, the plaintiff, whose property had been condemned 14 years earlier by the United States, brought an action in Indiana state court alleging that the condemnation proceeding was void and that the United States and others were trespassing on her land. The case was removed to the district court, which dismissed the complaint. This Court affirmed, holding that removal was proper under 28 U.S.C. § 1441(b), which permits removal of any case wherein the matter in controversy arises under the Constitution and laws of the United States. Cole, 657 F.2d at 109. This Court held that because the plaintiff had alleged that the acts of the United States violated the Fifth Amendment to the United States Constitution, removal was proper. Id.
 
 
 16
 The appellants in this case have attempted to avoid the result in Cole by modifying their argument somewhat. In these cases each appellant argues that the United States has failed to comply with the provisions of Indiana Code §§ 4-21-4-1 and 4-21-4-2, which the appellants allege provide the exclusive method for acquiring land along the Ohio River for navigation improvement. The appellants' argument is meritless. The power of eminent domain inheres in the federal government by right of its sovereignty, and is not subject to limitation by the states. James v. Dravo Construction Co., 302 U.S. 134, 147, 58 S.Ct. 208, 215, 82 L.Ed. 155 (1937). However the appellants may choose to label their actions, they are in fact actions for inverse condemnation under the Fifth Amendment to the United States Constitution. Myers v. United States, 323 F.2d 580, 583 (9th Cir.1963). The appellants' only remedy would then be for damages under the Tucker Act, 28 U.S.C. §§ 1346 and 1491. Dugan v. Rank, 372 U.S. 609, 611, 83 S.Ct. 999, 1001, 10 L.Ed.2d 15 (1963). Because these actions therefore arise under the laws of the United States, they were properly removed to the district court. 28 U.S.C. § 1441(b).
 
 B. Trespass
 
 17
 As to the second issue raised by the appellants, Cole explicitly held that the United States has not consented to be sued for trespass in state courts. Cole, 657 F.2d at 109. The appellants' claims are therefore barred by sovereign immunity. Alternatively, we agree with the district court in these cases that the state courts lacked jurisdiction over the subject matter of these cases. Exclusive jurisdiction over claims arising under the Tucker Act is vested in the district court, 28 U.S.C. § 1346 (amounts under $10,000), and the Court of Claims, 28 U.S.C. § 1491 (amounts over $10,000). The state courts in which these cases were originally filed therefore lacked subject matter jurisdiction over these cases. Because the jurisdiction of the district court upon removal is derivative from that of the state courts, the district court also lacked jurisdiction and correctly dismissed the complaints. People of State of Illinois v. Kerr-McGee Chemical Co., 677 F.2d 571, 575 (7th Cir.), certiorari denied, --- U.S. ----, 103 S.Ct. 469, 74 L.Ed.2d 618 (1982). Although this jurisdictional anomaly has been criticized, id., 14 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3722 (1976), it is a rule firmly entrenched in federal law. Id.; Crowel v. Administrator of Veterans Affairs, 699 F.2d 347, 350 (7th Cir.1983).
 
 C. Title
 
 18
 The third issue concerns appellants Smiths' and Winkler's claims that the transfers of land from them to the United States--the Smiths' by condemnation and Winkler's by purchase--were void and that they are the true owners of the properties in question. These cases are then effectively actions to quiet title against the United States,[7] and 28 U.S.C. § 1346(f) vests exclusive jurisdiction over quiet title actions against the United States in the district court. Block v. North Dakota, --- U.S. ----, ---- - ----, 103 S.Ct. 1811, 1815-20, 75 L.Ed.2d 840 (1983). Once again, because the jurisdiction of the district courts upon removal is derivative of the state court's jurisdiction, dismissal of these claims is proper.
 
 D. Sanctions
 
 19
 Lastly, the United States requests that we assess costs and fees against the appellants' counsel on the ground that these appeals are frivolous. An award of costs or damages may be grounded on two sources: 28 U.S.C. § 1927 or Rule 38, Federal Rules of Appellate Procedure. Damages under either § 1912 or Rule 38 may include attorneys' fees, Cummings v. United States, 648 F.2d 289, 293 (5th Cir.1981); see Werch v. City of Berlin, 673 F.2d 192, 196 (7th Cir.1982) (costs and attorneys' fees assessed pursuant to F.R.A.P. 38). We will consider each source of authority to impose sanctions in turn.
 
 
 20
 This Court has held that costs and damages may be imposed under § 1927 only to sanction needless delay. Maneikis v. Jordan, 678 F.2d 720, 721 n. 5 (7th Cir.), certiorari denied, --- U.S. ----, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982); see Overnight Transportation Co. v. Chicago Industrial Tire Co., 697 F.2d 789, 794 (7th Cir.1983) (discussion of the purpose of § 1927). In this case the appellants have not engaged in a strategy of delay and sanctions under § 1927 are therefore unwarranted.
 
 
 21
 Delay is not a prerequisite to liability under Rule 38, Fed.R.App.P., and for which a two-part analysis is required to determine whether costs and damages should be assessed against an appellant. Ruderer v. Fines, 614 F.2d 1128, 1132 (7th Cir.1980). The first determination made is whether the appeal is frivolous. Id. While a frivolous appeal means something more than an unsuccessful appeal, the law may be so clear and well established that persistence in a course of litigation could be evidence of bad faith. N.L.R.B. v. Lucy Ellen Candy Division of F & F Laboratories, Inc., 517 F.2d 551, 555 (7th Cir.1975). In Analytica, Inc. v. NPD Research, Inc., 708 F.2d 1263 at 1269-1270 (7th Cir.1983), this Court held that insistence on litigating a question in the face of controlling precedents which removed every colorable basis in law for the litigant's position amounted to bad faith justifying an award of fees. Similarly, in Werch v. City of Berlin, 673 F.2d 192, 196 (7th Cir.1982) we held that any reasonable grounds for the appellant's position in that case had been abrogated by an intervening decision of the Supreme Court, and that the appellant's actions in continuing to litigate the appeal was "frivolous, unreasonable, and groundless." These appeals are likewise frivolous. Cole v. United States unequivocally disposed of the principal claim raised by appellants. Counsel for appellants in this case was also counsel for the appellant in Cole. To pursue these appeals after certiorari was denied in Cole renders these appeals frivolous.[8] McCandless v. Great Atlantic and Pacific Tea Co., 697 F.2d 198, 201 (7th Cir.1983) (fact that attorney was aware of meritlessness of action one factor used in determining bad faith). See Tatum v. Regents of Nebraska--Lincoln, --- U.S. ----, 103 S.Ct. 3084, 77 L.Ed.2d 1346 (1983) (award of damages against petitioner pursuant to Supreme Court rule allowing award of damages when appeal or petition for certiorari is frivolous).
 
 
 22
 The second determination that must be made is whether the case is an appropriate one for the imposition of sanctions. Ruderer v. Fines, 614 F.2d at 1132. Typically the courts have looked for some indication of the appellant's bad faith suggesting that the appeal was prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or out of sheer obstinacy. Id. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980) (discussing scope of bad faith). In these cases it is not the obstinacy of the appellants but rather that of their attorney which is of more concern. The record suggests that this litigation was commenced to harass the government.[9] In addition, counsel for the appellants' argument that federal condemnation authority can be preempted by state regulation and counsel's response to the appellees' motion to correct a clerical error in Winkler are both so meritless as to amount to further evidence of bad faith. Analytica v. NPD, 708 F.2d 1263 at 1269 (continued litigation in face of controlling precedents which removed even colorable basis in law for litigant's position amounts to bad faith); Maneikis v. Jordan, 678 F.2d at 722-23 (decision to appeal should be a considered one; attorney must have known appeal was frivolous); see also Bugg v. International Union of Allied Industrial Workers of America, 674 F.2d 595, 600 (7th Cir.), certiorari denied, --- U.S. ----, 103 S.Ct. 29, 74 L.Ed.2d 43 (1982) (successful Title VII defendant entitled to an award of attorneys' fees for a frivolous and unreasonable appeal brought without foundation; plaintiff should have known case was "wholly lacking in merit"). Further, an assessment of costs in favor of the government is permitted. See Ruderer v. Fines, 614 F.2d 1128 (7th Cir.1980) (costs awarded to Attorney General and United States). While the appellees have requested fees and costs only in Smith, we sua sponte raise the issue in the other appeals. Ruderer v. Fines, 614 F.2d at 1132. Pursuant to Rule 38, double costs are assessed in all of these appeals against counsel for the appellants.
 
 III. CONCLUSION
 
 23
 For the reasons stated above, the orders of the district courts are affirmed.
 
 
 
 *
 After preliminary examination of the briefs, the Court notified the parties that it had tentatively concluded that argument would not be helpful to the Court in this case. The notice provided that any party might file a "Statement as to Need for Oral Argument." See F.R.A.P. 34(a); Circuit Rule 14(f). Having considered the plaintiffs-appellants' Statement as to Need for Oral Argument, the Court has concluded that oral argument is not necessary. Accordingly, this case has been submitted for decision on the briefs and record
 
 
 [1]
 The apparent reason for the presence of the non-federal appellees in Winkler is that the Indiana-Michigan Electric Co. and the United States have agreed to a land swap that includes the parcel under dispute in this case. Appellant presumably desires to prevent this exchange. Appellee Shelly & Sands is a contractor of appellee Indiana-Michigan Electric Co. Beyond appellant Winkler's initial allegations of trespass, it is unclear why the State of Indiana and the Spencer County Recreation Board were named as respondents. Indiana never submitted a responsive pleading and the Spencer County Recreation Board simply submitted an answer denying appellant Winkler's allegations
 
 
 [2]
 Inverse condemnation is "a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." Agins v. City of Tiburon, 447 U.S. 255, 258 n. 2, 100 S.Ct. 2138, 2140 n. 2, 65 L.Ed.2d 106 (1980). See 1981 Wis.L.Rev. 790, 791 n. 19
 
 
 [3]
 Citing a number of antitrust cases, appellants argue that Indiana has with state regulation completely occupied the area of acquisition of land along the Ohio River for navigational improvements, and that absent express action by Congress, federal preemption will not be presumed
 
 
 [4]
 Appellant Reid's petition was filed on July 7, 1980. Appellant Lorch's petition was filed on July 8, 1980. Appellant Smith's petition was filed on October 10, 1980. Appellant Winkler's petition was filed on June 27, 1980
 
 
 [5]
 All appellants are represented by the same counsel, who also represented the appellant in Cole
 
 
 [6]
 The record in Loesch is not included in the record of these appeals. The docket sheet in Loesch, however, is attached to appellant Winkler's reply brief and it states that Loesch's motion for class certification was denied on lack of numerosity and commonality of issues grounds
 
 
 [7]
 Appellants in fact concede that their actions are ones to quiet title
 
 
 [8]
 Cole was decided on March 11, 1981. Certiorari was denied on November 30, 1981. The appeal in Reid was filed on January 26, 1981; in Lorch on October 18, 1981; in Smith and Winkler on November 14, 1981. Appellant's main brief in Reid was filed on March 9, 1981; in Lorch on November 25, 1981; in Smith on January 6, 1982; and in Winkler on May 20, 1982. The reply brief in Reid was filed on April 20, 1981; in Lorch on January 11, 1982; in Smith on March 9, 1982; and in Winkler on August 2, 1982. These cases were consolidated on January 26, 1982. Appellants also filed a "Response in Opposition to Motion ... to Correct Clerical Error ... Motion for Conference and Motion for Stay" on January 18, 1982. While all the appeals were filed prior to the denial of certiorari in Cole, the main brief in Smith and Winkler, the reply brief in Lorch, Smith, and Winkler and the appellant's response to the motion to correct clerical error in Winkler were all filed subsequent to denial of certiorari in Cole
 
 
 [9]
 In one of the records in this appeal, counsel for appellant is quoted as saying "We have set the brush fires, now let the government deal with them." In addition to the four appeals consolidated in this case and the six cases consolidated in Loesch, 645 F.2d 905, counsel for the appellants have filed at least two other actions before the Court of Claims representing respectively eighteen (including appellant Lorch) and twenty-one (including appellant Reid) claimants. The disposition of these cases is not shown in the record. In addition, in In re Complaint of Judicial Misconduct, No. 1 (U.S.Ct.Cl. April 15, 1983), a case related to Baskett v. United States, 2 Cl.Ct. 356 (1983), the Court of Claims found that a judicial misconduct charge filed by counsel for appellants in this case had been an abuse of judicial process. The opinion suggests that Baskett, the case underlying the judicial misconduct complaint, is yet another suit concerning the Ohio River dams. The court noted a "grave concern" that counsel for the appellants in these cases have engaged in a "pattern of abuse." In re Complaint of Judicial Misconduct, No. 1, Slip Op. at 9. The court publicly reprimanded counsel and fined them $500 each. Id. at 10